## McDole v. McDole
*[Cite as 5 AOA 65]*

*Case No. 89 CA 16*
*Washington County, (4th)*
*Decided July 6, 1990*

*James E. Schneider, Bertram & Schneider, Marietta, Ohio, for Appellant.*

*James R. Addison, Addison, Funk & Nuzum, Marietta, Ohio, for Appellee.*

HARSHA, J.

This is an appeal from a judgment entered by the Washington County Court of Common Pleas following a bench trial and granting Patrick E. McDole, plaintiff-appellant, and Erma J. McDole, defendant-appellee, a divorce on the basis that both parties had been guilty of gross neglect of duty. The trial court additionally divided the parties' marital property and declared an antenuptial agreement between the parties to be void and unenforceable.

Appellant assigns the following as his sole assignment of error:

"The Trial Court erred in finding the Ante-Nuptial Agreement of the parties to be void and not enforceable, since the Agreement signed by the parties and received into evidence as Exhibit "A" met all of the tests established by the Ohio Supreme Court in *Gross v. Gross,* 11 Ohio St. 3d 99 (1984). The Trial Court, pursuant to the authority of *Gross v. Gross* and the prior body of case law upon which it was formulated, should have given full force and effect to the Ante-Nuptial Agreement and Belrock Avenue, Belpre, house outright to Appellant. The Trial Court erred in awarding to Defendant-Appellee any part of the equity of the real estate on Belrock Avenue which was fully disclosed is the Ante-Nuptial Agreement."

On October 11, 1969, the parties were married and subsequently had one child who was emancipated prior to the divorce. On May 13, 1988, appellant filed a complaint which alleged that appellee had been guilty of gross neglect of duty, extreme cruelty, and adultery. Appellant's

complaint prayed for, *inter alia,* a divorce, ownership of the marital domicile, and enforcement of an antenuptial agreement entered into between the parties. On May 18, 1988, appellee filed an answer to appellant's complaint, admitting that she had entered into an antenuptial agreement with appellee, but stating that such agreement was void and unenforceable. On the same date, appellee filed a counterclaim which alleged that appellant was guilty of gross neglect of duty and extreme cruelty, and requested an equitable share of the real and personal property of the parties, and permanent sustenance alimony.

On February 2, 1989, a trial was held upon appellant's complaint and appellee's counterclaim at which the following pertinent evidence was adduced. On the date of the parties' marriage, they executed an antenuptial agreement, the general substance of which they had discussed some three to four weeks earlier. The agreement provided that appellant desired to retain "absolute and full control" of property at 917 Belrock Avenue, Belpre, Ohio, which was to become the parties' marital domicile, a ten acre tract of land in Meigs County, Ohio, and three additional tracts of land totalling ninety-eight acres which were also located in Meigs County, Ohio. The antenuptial agreement listed the approximate value of the Belpre property as $16,000 and of the ten acre Meigs County tract as $5,000. No approximate value was given in the agreement regarding the three Meigs County tracts which constituted ninety-eight acres and nothing in the agreement specified that there were any mortgages on the real property.

The October 11, 1969 antenuptial agreement further provided as follows:

"And the said ERMA JEAN LAMP for the consideration aforesaid hereby covenants and agrees to and does hereby release, remise, and relinquish all claim of curtesy and dower, inheritance and distribution and any other right or claim, which she might have or might arise by virtue of said marriage into the real property and proceeds thereof now owned or which may arise by virtue of ownership now vested in PATRICK E. McDOLE."

Appellant testified that at the time of the marriage, he was thirty years old, appellee was twenty years old, and that they had both had children from prior marriages. On August 5, 1966, appellant and his first wife, Florence McDole, executed a mortgage deed on the Belpre property, using this property to secure a $12,000 loan, with mortgage payments at the rate of $86 per month, beginning on September 1, 1966 and ending August 31, 1986. On August 3, 1968, appellant executed a second mortgage deed on the Belpre property, securing a $1,100 loan, with mortgage payments at the rate of $13 per month, beginning on September 1, 1968 and ending August 31, 1978. According to appellant, up until the October 11, 1969 date of his marriage, to appellee, he had been making regular payments on both mortgages. Appellant further testified that he disclosed the existence of the mortgages to appellee approximately three weeks prior to executing the agreement.

Appellant testified that his first wife Florence had signed a quitclaim deed which relinquished her interest in the Belpre property to him, that appellee's name was never on the mortgages to the Belpre property, that during his marriage to appellee, they had separate bank accounts, that appellee never contributed to paying the mortgages, and that there were no outstanding mortgages on any of the Meigs County property at the time of his marriage to appellee. Appellant was unemployed between 1981 and 1983. The parties stipulated that the current fair market value of the Belpre property, i.e. the marital domicile, was $29,000. The mortgages on such property had been canceled on April 21, 1975 and December 14, 1984, respectively.

Appellee testified that prior to October of 1969, she never owned any real estate and did not have any experience with real estate transactions, that appellant hired an attorney to prepare the antenuptial agreement, that she did not read the agreement completely, that she was not made aware of the mortgages on the Belpre property prior to executing the agreement, and that appellant's attorney advised her that the purpose of the antenuptial agreement was so that the property appellant owned before they were married stayed with him upon divorce. Appellee further testified that she often put money she had earned into appellant's checking account, that she assisted in making the mortgage payments on the Belpre property, and that appellant's attorney never suggested that she should have an attorney of her own choice to review the antenuptial agreement before she signed it.

On March 28, 1989, the trial court entered a judgment which granted both parties a divorce on the basis that they had both been guilty of gross neglect of duty. The trial court determined that the antenuptial agreement was void and

unenforceable because there was a lack of full disclosure concerning the value of the ninety-eight acre Meigs County property and the existence of mortgages on the Belpre property. The trial court further awarded the ten and ninety-eight acre Meigs County parcels to appellant as non-marital property and decided that at the time of the marriage, appellant had built up an equity in the Belpre property which was .252 of its fair market value at that time. Applying this percentage to the property's current fair market value of $29,000, the court calculated the marital property value of the Belpre parcel to be $21,689. The trial court then awarded appellant the Belpre property but utilized the $21,689 "marital value" figure in its division of the marital assets of the parties, eventually ordering appellant to pay appellee $12,024 in order to equalize the division of assets. Appellee's request for sustenance alimony was denied.

Appellant's sole assignment of error asserts that the trial court erred in finding that the antenuptial agreement of the parties was void and unenforceable and in thereby awarding to appellee part of the equity of the Belpre property. An antenuptial agreement is a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage. The property rights and economic interests of either the prospective wife or husband, or both, are determined and set forth, with the agreements often including provisions concerning the distribution of property upon divorce. *Gross v. Gross* (1984), 11 Ohio St. 3d 99, 102; Note, The Antenuptial Contract in Ohio (1978), 28 Case W.L.Rev. 1040.

Although antenuptial agreements are not *per se* invalid, they must meet certain minimum standards of good faith and fair dealing. *Zimmie v. Zimmie* (1984), 11 Ohio St. 3d 94, 98. Upon judicial review of an antenuptial agreement, it must meet general tests of fairness and must be construed within the context that by virtue of their anticipated marital status, the parties are in a fiduciary relationship to one another. Accordingly, the parties are under a mandatory duty to act in good faith with a high degree of fairness and disclosure of all circumstances which materially bear on the antenuptial agreement. *Gross, supra* at p. 108; *Cohen v. Estate of Cohen* (1986), 23 Ohio St. 3d 90, 92.

Antenuptial agreements are valid and enforceable in Ohio (1) if they have been entered into freely without fraud, duress, coercion or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce. *Gross, supra* at paragraph two of the syllabus. The trial court found that the first and third parts of the *Gross* test for validity of antenuptial agreements had been met by the agreement at issue. However, the trial court expressly determined that the second part of the *Gross* test had not been met since the agreement failed to disclose the value of the ninety-eight acre Meigs County parcel and further failed to disclose the existence of mortgages on the Belpre property. Appellant essentially contends that such conclusion is erroneous since, pursuant to *Gross,* the Supreme Court of Ohio did not intend to invalidate all antenuptial agreements that failed to assign values to the property listed. Appellant further argues that because appellee divested herself of all interest in the Belpre property by signing the antenuptial agreement, it was irrelevant that any mortgages on such property were not listed in the agreement.

The elements of the second condition would be satisfied either by the exhibiting of an attachment to the antenuptial agreement or a listing of the assets of the parties to the agreement, or alternatively a showing that there has been a full disclosure by other means. *Gross, supra* at p. 105. In *Gross,* the Supreme Court of Ohio determined that there had been a full disclosure of the assets of the parties as evidenced by a list of assets attached to the antenuptial agreement. The valuation of the assets listed therein was stated as being in the proximity of $550,000. In *Zimmie, supra* at p. 98, the Supreme Court of Ohio held that there was sufficient evidence to support the trial court's conclusion that the plaintiff therein did not voluntarily enter into an antenuptial agreement with the requisite full disclosure of the defendant's financial worth in that, unlike the facts of *Hook v. Hook* (1982), 69 Ohio St. 2d 234, there was no statement of approximate valuation of assets in the antenuptial agreement. We note that in *Hook* at p. 238, the Supreme Court expressly refused to hold that a full itemization of assets and their worth is required by stating, "We find no requirement that the parties to such an agreement itemize their various assets and their worth." In the case at bar, there is no statement of approximate valuation of the ninety-eight acre parcel owned by appellant in the antenuptial agreement and there is further no statement of the existence of

mortgages on appellant's Belpre property, which arguably would effect both the extent of his ownership of such property at the time of the parties' marriage and the need to use marital assets to satisfy the underlying debt. Pursuant to the manifest language of the second condition of the *Gross* test as well as appellee's testimony that she did not know about the mortgages nor the value of the ninety-eight acre Meigs County parcel prior to her marriage to appellee, the trial court did not err as a matter of law in determining that the antenuptial agreement was void and unenforceable.

The valuation utilized by the trial court herein in its division of the marital property indicated that a large part of the Belpre property's value constituted marital property. The rationale supporting the concept of marital property is that (1) marriage is a voluntary partnership with an implication of equal rights, duties, and contributions; (2) the division of marital duties between the parties was made by mutual consent and with joint approval and, therefore, may be deemed to have been accepted by the parties as being more or less equal; and (3) the combined product of the parties' efforts is thus to be equally shared between them upon the conclusion of the relationship. *Wolfe v. Wolfe* (1976), 46 Ohio St. 2d 399. It is apparent that there was sufficient evidence to indicate that the mortgage payments on the Belpre property were made with marital funds.

The sole consideration for a reviewing court in its analysis of a trial court's division of property in the context of a divorce is whether there has been an abuse of discretion by the trial court. *Kaechele v. Kaechele* (1988), 35 Ohio St. 3d 93. An abuse of discretion connotes more than an error of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court in granting such motion. *Worthington v. Worthington* (1986), 21 Ohio St. 3d 73. Non-marital property acquired by one party before marriage, partly paid for before marriage, and subsequently paid for in part from marital funds is non-marital property in proportion to the ratio between the non-marital and the marital contributions applied to its acquisition. Baldwin's Ohio Domestic Relations Law (1988) 253, T 25.02; see also *Worthington, supra; Walkup v. Walkup* (1986), 31 Ohio App. 3d 248. Accordingly, the trial court did not abuse its discretion in its division of the property herein. Accordingly, for the foregoing reasons, appellant's assignment of

error is overruled, and the judgment of the trial court is affirmed.